IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Jack J. Slim,<br><br>          Plaintiff<br><br>               v.<br><br>Life Insurance Company of North America, Royal Blue Hospitality, LLC d/b/a El Conquistador Resort-Puerto Rico, et al.,<br><br>          Defendants. | Civil No. 24-1162(GMM) |

## OPINION AND ORDER

Before the Court is Defendant Life Insurance Company of North America's ("LINA") *LINA'S Motion for Judgment on the Administrative Claim Record and to Dismiss All Claims* ("LINA's Motion for Judgment") (Docket No. 48); Defendant Royal Blue Hospitality, LLC d/b/a El Conquistador Resort - Puerto Rico's ("Royal Blue") *Motion for Judgment on the Record for Judicial Review and Incorporated Memorandum Of Law* ("Royal Blue's Motion for Judgment")(Docket No. 49); and Plaintiff Jack J. Slim's ("Slim") *Motion for Judgment on the Administrative Record* ("Plaintiff's Motion for Judgment") (Docket No. 50).

### I.    PROCEDURAL HISTORY

On July 19, 2024, Slim filed an *Amended Complaint* under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1001 et seq, against LINA and his employer, Royal Blue. On November 22,

Civil No. 24-1162 (GMM)
Page – 2 –

2024, the Court issued an *Opinion and Order*. It granted in part and denied in part LINA's *Motion to Dismiss* at Docket No. 23. *See* (Docket No. 40). The Court determined that Slim's claim for denial of benefits under ERISA Section 502(a)(1)(B) survived dismissal. (Id. at 14). The Court also concluded that Slim failed to state claim for breach of fiduciary duties under Sections 501 (a)(2) and (a)(3). (Id. at 12).

Consequently, on November 26, 2024, the Court granted LINA's *Motion to Proceed with Matter as an Administrative Appeal, for Judgment Based on the Administrative Record and to Amend Scheduling Order*. It ordered the parties to submit a copy of the complete administrative record along with their Motions for Judgment on the Record for Judicial Review, with incorporated Memoranda of Law. (Docket No. 43). Accordingly, on January 28, 2025, LINA filed a *Motion Submitting Administrative Claim Record and Plan Documents* ("Administrative Record"). (Docket No. 47). On that same date, LINA's Motion for Judgment was filed. (Docket No. 48). Likewise, Royal Blue filed its Motion for Judgment. (Docket No. 49). Plaintiff's Motion for Judgment was also filed on January 28, 2025. (Docket No. 50).

On February 11, 2025, LINA filed its *Opposition to Plaintiff's Motion for Judgment on the Administrative Record*. (Docket No. 51). On even date, Royal Blue filed *Royal Blue Hospitality's Response to Plaintiff's "Motion for Judgment on the Administrative Record"*.

Civil No. 24-1162 (GMM)
Page – 3 –

(Docket No. 52). Also on that date, Slim filed his *Response to Defendants' Motions for Judgment on the Administrative Record.* (Docket No. 53).

## II.    STANDARD OF REVIEW

ERISA allows a participant or beneficiary to bring an action "to recover benefits" under a plan governed by the statute. *See* 29 U.S.C. § 1132(a)(1)(B). "In the ERISA context, motions for summary judgment 'are nothing more than vehicles for teeing up ERISA cases for decision on the administrative record.'" <u>Ministeri v. Reliance Stand. Life Ins. Co.</u>, 42 F.4th 14, 21 (1st Cir. 2022) (*quoting* <u>Stephanie C. v. Blue Cross Blue Shield of Mass. HMO Blue, Inc.</u>, 813 F.3d 420, 425 n.2 (1st Cir. 2016)). This posture sweeps aside "[t]he burdens and presumptions normally attendant to summary judgment practice." <u>Id.</u> That is, "the factual determination of eligibility for benefits is decided solely on the administrative record, and 'the non-moving party is not entitled to the usual inferences in its favor.'" <u>Bard v. Boston Shipping Ass'n</u>, 471 F.3d 229, 235 (1st Cir. 2006) (*quoting* <u>Orndorf v. Paul Revere Life Ins. Co.</u>, 404 F.3d 510, 517 (1st Cir. 2005)).

As a first step, "an inquiring court must peruse the plan documents in order to determine the standard of judicial review applicable to a claims administrator's denial of benefits."

Civil No. 24-1162 (GMM)
Page – 4 –

McDonough v. Aetna Life Ins. Co., 783 F.3d 374, 379 (1st Cir.
2015).

A challenge to a denial of benefits is reviewed *de novo*
"unless the benefit plan gives the administrator or fiduciary
discretionary authority to determine eligibility for benefits or
to construe the terms of the plan." Stephanie C. v. Blue Cross
Blue Shield of Mass. HMO Blue, Inc., 813 F.3d 420, 427 (1st Cir.
2016) (*quoting* Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101,
115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)). "Where the delegation
of discretionary authority is sufficiently clear and notice of it
has been appropriately provided, the claims administrator's
decision will be upheld unless it is arbitrary, capricious, or an
abuse of discretion." Id. Under this standard, "a reviewing court
asks whether a[n]. . .administrator's determination is plausible
in light of the record as a whole, or, put another way, whether
the decision is supported by substantial evidence in the record."
Niebauer v. Crane & Co., 783 F.3d 914, 923 (1st Cir. 2015)
(internal quotation marks omitted). An administrator's decision
"must be upheld if there is any reasonable basis for it." Madera
v. Marsh USA, Inc., 426 F.3d 56, 64 (1st Cir. 2005).

Civil No. 24-1162 (GMM)
Page – 5 –

### III.    FINDINGS OF FACT BASED ON DE NOVO REVIEW OF ADMINISTRATIVE RECORD

The parties filed the Administrative Record at Docket No. 47.

Upon its review, the Court makes the following findings of fact:

1.  On August 16, 2021, Royal Blue hired Slim as Manager Director/General Manager at El Conquistador. He held that position at all times relevant to the *Amended Complaint*. (Docket No. 47-2 at 28;41).

2.  LINA issued Group Life Insurance Policy SGM 610197 ("the Policy") to the Trustee of the Group Insurance Trust for Employees in the Services Industries on behalf of Royal Blue. (Docket Nos. 47-1; 47-2 at 71-115).

3.  The Policy is deemed a Group Life Insurance Plan Document under ERISA ("The Plan"). (Docket No. 47-2 at 1).

4.  Royal Blue was the plan administrator. (Docket No. 47-1 at 42).

5.  Under the terms of the Plan, Royal Blue acts as an agent of the employees for all transactions relating to the Policy. (Docket No. 47-1 at 34).

6.  As plan administrator, Royal Blue appointed LINA as a claim fiduciary ("Claim Fiduciary") for the review of claims for benefits. (Docket No. 47-2 at 3).

7.  According to the document titled "Employee Welfare Benefit Plan Appointment of Claim Fiduciary", as the designated Claim Fiduciary, LINA is "responsible for adjudicating claims for benefits under the Plan, and for deciding any appeals of adverse claim determinations." (Docket No. 47-2 at 3).

8.  Pursuant to this delegation by the plan administrator, LINA has "the authority, in its discretion, to interpret the terms of the Plan, including the Policies, to decide questions of eligibility for coverage or benefits under the

Civil No. 24-1162 (GMM)
Page – 6 –

Plan; and to make any related findings of fact. All
decisions made by such Claim Fiduciary shall be
final and binding on Participants and Beneficiaries
of the Plan to the full extent permitted by law."
(Docket No. 47-2 at 3).

9.   As an active full-time employee of Royal Blue, who
     regularly worked a minimum of 30 hours per week in
     the United States, earned at least $15,000 annually
     and is a citizen of the United States, Slim was an
     eligible beneficiary of the Plan. (Docket No. 47-1
     at 13; 47-2 at 73).

10.  Slim first became eligible to elect Plan benefits
     on November 16, 2021, after he met the Eligibility
     Waiting Period. (Docket No. 47-2 at 41).

11.  As per the "Insurance Enrollment Form" signed by
     Slim on November 30, 2021, he elected the "Group
     Term Dependent" life benefits in the amount of
     $300,000. However, the maximum amount allowed by
     the Plan is $250,000. (Docket No. 47-2 at 42; 128).

12.  As per the "Insurance Enrollment Form", Slim
     enrolled his wife, Stephanie Slim, in the voluntary
     spouse life insurance, declared he had been married
     to her since August 25, 2011, and indicated that he
     was married to her at the time on enrollment.
     (Docket No. 47-2 at 128).

13.  The Plan provides for spouse benefits which include
     a Guaranteed Issue Amount of $30,000.00, but
     employees can elect to increase coverage up to a
     maximum of $250,000.00 ("supplemental coverage").
     (Docket No. 47-1 at 14; 47-2 at 76).

14.  To obtain the supplemental coverage, the Plan
     requires proof that the spouse satisfies the
     Insurability Requirement. (Docket No. 47-1 at 15;
     47-2 at 77).

15.  Specifically, the Plan provides:
         *For Spouses*
         During an Annual Enrollment Period, an
         eligible Employee may elect coverage for
         his or her eligible Spouse.  If a Spouse
         is currently insured under the Voluntary

Civil No. 24-1162 (GMM)
Page – 7 –

> Life Insurance portion of this Policy,
> his or her Voluntary Life Insurance
> Benefit may be increased, as long as the
> total Benefit does not exceed the Maximum
> Benefit, by satisfying the Insurability
> Requirement.  If a Spouse is eligible for
> the Voluntary Life Insurance portion of
> this Policy but has not previously
> enrolled, he or she may become insured
> under the Policy, as long as the total
> Benefit does not exceed the Maximum
> Benefit, by satisfying the Insurability
> Requirement.  Insurance will be effective
> on the later of the Policy Anniversary
> following the Annual Enrollment Period or
> the date the Insurance Company agrees in
> writing to insure the Spouse. (Docket No.
> 47-2 at 77).

16.  The Plan also states under "Initial Enrollment":
> A Spouse may become insured for an amount
> in excess of amounts described above only
> if he or she satisfies the Insurability
> Requirement. Any excess amount will be
> effective on the date the Insurance
> Company agrees in writing to insure the
> Spouse. (Docket No. 47-2 at 87).

17.  Under the "Definitions" section of the Plan,
     "Insurability Requirement" is defined as follows:
> An eligible person satisfies the
> Insurability Requirement for an amount of
> coverage on the day we agree in writing
> to accept you as insured for that amount.
> To determine a person's acceptability for
> coverage, we will require you to provide
> evidence of good health and may require
> it be provided at your expense. (Docket
> No. 47-1 at 34; 47-2 at 107).

18.  Regarding the effective date of insurance, the Plan
     provides:
> An Employee or his or her eligible Spouse
> will be insured for an amount that
> exceeds the Guaranteed Issue Amount on
> the date the Insurance Company agrees in
> writing to insure that eligible person.

Civil No. 24-1162 (GMM)
Page – 8 –

> The Insurance Company will require the
> eligible person to satisfy the
> Insurability Requirement before it
> agrees to insure him or her.

19. Slim's wife passed away on February 16, 2023.
(Docket No. 47-2 at 9-15).

20. On June 12, 2023, LINA received Slim's claim for
life insurance benefits in connection to the death
of his wife. (Docket No. 47-2 at 116-123).

21. Slim's "Proof of Loss" form requested voluntary
supplemental insurance benefits in the amount of
$250,000.00. (Docket No. 47-2 at 122).

22. Through a letter dated October 4, 2023, LINA
informed Slim that he would receive the Guaranteed
Issue Amount of $30,000.00, representing the Spouse
Guaranteed Issue Amount. (Docket No. 47-2 at 30).

23. Through a separate letter also dated October 4,
2023, LINA informed Slim of the denial of the
voluntary supplemental benefits. (Docket No. 47-2
at 26-29).

24. Specifically, LINA informed that the following
documents were reviewed in reaching their
determination:

    a. The Policy claim form for the life of
Stephanie Slim

    b. State of Florida Certificate of Death for
Stephanie Slim

    c. Requested Proof of Evidence of Insurance
from LINA's Medical Underwriting
Department The Policy

    (Docket No. 47-2 at 27-28).

25. In addition to quoting the pertinent Plan sections,
LINA explained its determination as follows:

> Per the Royal Blue Hospitality Policy SGM
> 610197: "An Employee or his or her

Civil No. 24-1162 (GMM)
Page - 9 -

eligible Spouse will be insured for an
amount that exceeds the Guaranteed Issue
Amount on the date the Insurance Company
agrees in writing to insure that eligible
person. The Insurance Company will
require the eligible person to satisfy
the Insurability Requirement before it
agrees to insure him or her." In
addition, the policy stipulates that
during an Annual Enrollment Period, "If
a Spouse is currently insured under the
Voluntary Life Insurance portion of this
policy, [or] is eligible for the
Voluntary Life Insurance portion of this
Policy but has not previously enrolled,
he or she may become insured under the
Policy, as long as the total Benefit does
not exceed the Maximum Benefit, by
satisfying the Insurability
Requirement."

According to the documentation submitted
by Royal Blue Hospitality, you were hired
on 8/16/2021 and first enrolled Stephanie
Slim in Voluntary Spouse Life insurance
on 11/30/2021 in the amount of $300,000.
This amount exceeds the Maximum Benefit
($250,000) for Spouses under Class 1.
Furthermore, the amount elected over the
Guaranteed Issue ($30,000) required
completion of the Insurability
Requirement and approval, in writing, by
our Medical Underwriting Department. The
State of Florida Certificate of Death
indicates that Ms. Slim passed away on
2/16/2023.

Our Medical Underwriting Department
confirmed that they have no record of
Evidence of Insurability being submitted
or approved for Ms. Slim's Voluntary
Spouse Life Insurance benefit. As such,
we must regretfully inform you that the
amount of Voluntary Spouse Life benefits
elected over the Guaranteed Issue never
went into effect and is not payable.
Therefore, this benefit has been paid up

Civil No. 24-1162 (GMM)
Page – 10 –

> to the Guaranteed Issue Amount of
> $30,000.
> (Docket No. 47-2 at 28).

26. The denial letter also included the appeal rights
under ERISA, and explained that, among other
things, the appeal may contain "proof that
Stephanie Slim satisfied the Insurability
Requirement and her Voluntary Spouse Insurance
Election was approved, in writing, by our Medical
Underwriting Department for the amount elected over
the policy's Guaranteed issue." (Docket No. 47-2 at
28-29).

27. On October 26, 2023, Slim appealed the denial of
supplemental coverage. (Docket No. 47-2 at 53).

28. LINA received the appeal by e-mail on October 31,
2023 and by regular mail on November 6, 2023.
(Docket No. 47-2 at 33-34,53).

29. With his appeal, Slim submitted a completed
Evidence of Insurability Form dated November 17,
2021, and a printout of his paycheck deductions.
(Docket No. 47-2 at 34-38, 54-66).

30. On December 21, 2023, LINA upheld its decision to
deny the additional voluntary supplemental spouse
benefits. (Docket No. 47-2 at 41).

31. In the letter, LINA explained that the decision to
deny the benefits was based on the following:

   a.   you were hired at Royal Blue Hospitality,
        LLC on August 16, 2021;

   b.   you first became eligible to elect Group
        Term Dependent Life insurance benefits to
        become effective November 16, 2021 after
        you met the Eligibility Waiting Period;

   c.   you elected Group Term Dependent Life
        insurance benefits on Stephanie Slim in
        the amount of $250,000 to become
        effective November 16, 2021;

Civil No. 24-1162 (GMM)
Page – 11 –

     d.    the Policy provides a Spouse Guaranteed Issue Amount of $30,000, and amounts above this required proof that she satisfied the Insurability Requirement to be submitted; and

     e.    proof that she satisfied the Insurability Requirement was never received, and Life Insurance Company of North America never agreed in writing to insure her for any amount above the Guaranteed Issue Amount of $30,000.

    (Docket No. 47-2 at 41-42).

32.   The letter provided a summary of the evidence reviewed and an explanation for LINA's decision. (Docket No. 47-2 at 42-46).

33.   In particular, the decision stated that LINA's "Medical Underwriting department reported proof Mrs. Slim satisfied the Insurability Requirement was never received. Therefore, LINA never agreed in writing to insure her for the amount of Group Term Dependent Life insurance benefits elected above the Guaranteed Issue Amount." (Docket No. 47-2 at 42).

34.   Further, the decision stated:

    Based upon the information on file as of October 4, 2023, the claim for Group Term Dependent Life insurance benefits above the $30,000 that was already paid following the death of Stephanie Slim was denied. Any amount elected above the Guaranteed Issue Amount required the Spouse to satisfy the Insurability Requirement, and this amount would become effective the date LINA agreed in writing to insure the Spouse.

    No proof was received that Mrs. Slim satisfied the Insurability Requirement, and LINA never agreed in writing to insure her for any amount above $30,000. Her coverage above the $30,000 never became effective and it we determined no

Civil No. 24-1162 (GMM)
Page – 12 –

> further Group Term Dependent Life
> insurance benefits were payable under
> policy SGM 610197.
> (Docket No. 47-2 at 43).

35.  In addition, the letter stated that while the
spreadsheets of Slim's Royal Blue payroll "showed
deductions for Group Term Dependent Life coverage,
the Evidence of Insurability form signed November
17, 2021, was not submitted to LINA at the time of
[his] application." (Docket No. 47-2 at 43).

36.  The letter also indicated that, "to the extent that
premiums may have been deducted from Slim's pay for
coverage otherwise unavailable under the Policy" he
should contact Royal Blue to arrange for a premium
refund. (Docket No. 47-2 at 43).

## IV.    APPLICABLE LAW AND ANALYSIS

### A.    Applicable Standard of Judicial Review

As previously highlighted, the First Circuit has consistently
stated that when a denial of benefits is challenged under ERISA,
courts apply a deferential arbitrary and capricious standard of
review if the benefit plan gives the administrator or fiduciary
discretionary authority to determine eligibility for benefits or
to construe the plan's terms. *See* Stephanie C. v. Blue Cross Blue
Shield of Mass. HMO Blue, Inc., 813 F.3d at 427 () (*quoting*
Firestone Tire & Rubber Co., 489 U.S. 101). In this case, Royal
Blue was designated as the plan administrator. However, Royal Blue
appointed LINA as a Claim Fiduciary and granted LINA discretionary
authority to adjudicate claims for benefits under the Plan and to
decide any appeals of adverse determinations as is reflected in
the document entitled "Employee Welfare Benefit Plan Appointment

Civil No. 24-1162 (GMM)
Page – 13 –

of Claim Fiduciary". *See* (Docket No. 47-2 at 3). Hence, the Court
must determine whether LINA's decision, as the Claim Fiduciary, is
arbitrary and capricious or, looked at from another angle, whether
that decision is reasonable and supported by substantial evidence
on the full record.

B.   Claim as to LINA

     A review of the Administrative Record reflects that Slim, as
an employee of Royal Blue, was an eligible beneficiary of the Plan.
The Policy provides for spouse benefits which include a Guaranteed
Issue Amount of $30,000.00, but employees can elect to increase
coverage up to a maximum of $250,000.00. Accordingly, Slim
submitted an "Insurance Enrollment Form" on November 30, 2021,
seeking the enrollment of his spouse in the voluntary spouse life
insurance for $250,000.

     To this point, the Administrative Record shows that to obtain
the supplemental coverage the Plan unequivocally requires proof
that the spouse satisfies the Insurability Requirement.
Specifically, the Policy clearly establishes that when "Spouse
coverage is elected **in an amount that exceeds the Guaranteed Issue
Amount**. . .this insurance will be effective on the date the
Insurance Company agrees in writing to insure that eligible person.
**The Insurance Company will require the eligible person to satisfy
the Insurability Requirement before it agrees to insure him or
her.**" *See* (Docket No. 47-2 at 88) (emphasis added). In another

Civil No. 24-1162 (GMM)
Page – 14 –

section, the Policy also states: "A Spouse may become insured for an amount in excess of amounts described above *only* **if he or she satisfies the Insurability Requirement. Any excess amount will be effective on the date the Insurance Company agrees in writing to insure the Spouse**." *See* (id. at 87). (emphasis added). Furthermore, the Policy defines the Insurability Requirement to "**require evidence of good health**." (Docket Nos. 47-1 at 34; 47-2 at 107) (emphasis added). In addition, the Insurability Requirement definition explains that it is satisfied "on the day [LINA] agree[s] in writing to accept you as insured for that amount." (Docket Nos. 47-1 at 34; 47-2 at 107).

A review of the Administrative Record reveals that Slim selected supplemental coverage "in an amount that exceeds the Guaranteed Issue Amount." Therefore, he had to comply with the Insurability Requirement. However, there is no evidence on the Administrative Record that shows that Slim complied with the Insurability Requirement.

The record only shows that on October 31, 2023 —after his wife's death and after her enrollment—, LINA received a copy an "Evidence of Insurability" form signed November 17, 2021, which was submitted with Slim's letter of appeal. *See* (Docket No. 47-2 at 33, 49, 54, 62). Together with the appeal Slim also sent spreadsheets of the Royal Blue payroll deductions for pay dates from September 3, 2021, through October 27, 2023. (Id. at 53-60).

Civil No. 24-1162 (GMM)
Page – 15 –

Slim, however, did not include any proof that the "Evidence of Insurability" form was either sent or received by e-mail or regular mail at the time of enrollment or prior to the appeal, nor did he submit the proof that he submitted the additionally required evidence to establish his spouse's "good health." Moreover, he did not submit any evidence that LINA had agreed in writing to insure his spouse.

On the contrary, the Administrative Record contains evidence that LINA did not receive the required "Evidence of Insurability." Specifically, an e-mail reflects the following: "We have no record of receiving any EOI's or approving any coverage for either of these individuals." *See* (Docket No. 47-2 at 17). An exhaustive review of the record reflects lack of any of the evidence regarding "Evidence of Insurability," except for the copy of the form submitted by Slim with the appeal.

For a denial of benefits claim, the Court's inquiry turns on the question whether the claimant has established that he is entitled to the benefits he seeks. Here, the record demonstrates that that Slim was not entitled to the supplemental coverage because he failed to provide "Evidence of Insurability" as required by the Plan.

Notwithstanding, Slim argues that the "denial of his spousal supplemental coverage claim was arbitrary and capricious inasmuch as between December 2021 and February 2023, LINA collected the

Civil No. 24-1162 (GMM)
Page – 16 –

premiums that Royal Blue deducted from the plaintiff's pay and
remitted to the former for such coverage, without any objections,
limitations or exceptions." (Docket No. 50 at 7). Slim seemingly
argues that by accepting premium payments, either intentionally or
tacitly, LINA waived the requirement for evidence of insurability.
He supports his contention referencing Shields v. United of Omaha
Life Ins. Co., 50 F.4th 236 (1st Cir. 2022). Unfortunately for
Slim, such contention finds no support in the Administrative
Record, nor in the applicable law.

As the First Circuit has explained "a waiver. . .[is] an
intentional relinquishment or abandonment of a known right or
privilege." Shields v. United of Omaha Life Ins. Co., 50 F.4th at
246-47 (*citing* Rodriguez-Abreu v. Chase Manhattan Bank, N.A., 986
F.2d 580, 587 (1st Cir. 1993)) (emphasis in the original). In this
case, Slim's claim fails because the record does not establish a
voluntary, intentional relinquishment of the requirement for
evidence of insurability as a predicate to his obtaining
supplemental coverage under the Plan. Other than pointing to the
deductions to his payroll, Slim identifies no other evidence in
the record that could show that LINA intended to make the claimed
waiver. To this extent, the decision on appeal sustains that
"payment of premium does not, by itself, create coverage under the
Policy where it would not otherwise exist." *See* (Docket No. 47-2
at 43).

Civil No. 24-1162 (GMM)
Page – 17 –

The consistent trend among the district courts is to refuse to apply waiver in ERISA cases where it would expand the scope of coverage under the ERISA plan to an otherwise ineligible participant. *See, e.g.,* Colardo v. Metro. Life Ins. Co., No. 8:10-cv-1615-T-30, 2011 WL 1899253 (M.D. Fla. Mar. 16, 2011). The First Circuit adopted that same reasoning in Shields v. United of Omaha Life Ins. Co., 50 F.4th 236, 247 (1st Cir. 2022) where, like in this case, plaintiff failed to comply with the Plan's evidence of good health requirement. There, the Court of Appeals refused to accept plaintiff's similar waiver argument and affirmed the district court's summary judgment.

Furthermore, with respect to evidence of good health, other courts have found that where evidence of good health is a required element for coverage, it cannot be waived as it is the plaintiff's burden to establish that he is entitled to benefits in an action brought pursuant to a contract or federal law. *See* American Society for Technion-Isreal Institute of Technology, Inc., 2009 WL 2883598, *7 (S.D.N.Y. Sept. 8, 2009). Furthermore, where the approval of good health is a condition of coverage, the defense of lack of good health will not be deemed waived, regardless of whether the burden was on the plaintiff to submit the necessary documentation or the defendant to request it. *See* Everett v. United of Omaha Life Ins. Co., No. CIV.A. 3:11-0926, 2013 WL 5570222, at *10 (M.D. Pa. Oct. 9, 2013); *see also* Rowello v. Healthcare

Civil No. 24-1162 (GMM)
Page – 18 –

Benefits, Inc., No. CIV. 12-4326 RBK/JS, 2013 WL 6510475, at *6
(D.N.J. Dec. 13, 2013) (holding that the insurer's decision was
not arbitrary and capricious because it was based upon substantial
evidence, and that the records supported a finding that it did not
receive any Evidence of Insurability form, and that plaintiff
failed to offer any evidence that could led a reasonable finder of
fact to conclude that they received it or knew of its existence);
Yale v. Sun Life Assur. Co. of Canada, No. 1:12-CV-01429-AWISAB,
2013 WL 5923073, at *13 (E.D. Cal. Oct. 31, 2013) ("A finding that
Yale's payment-and Sun Life's acceptance-of premiums for $250,000
worth of coverage constituted a waiver of the EOI requirements
would be "in direct conflict with the plain written terms of the
plan".); Funicelli v. Sun Life Fin. (US) Services Co., Inc., No.
CIV.A. 12-06659 FLW, 2014 WL 197911, at *9 (D.N.J. Jan. 14, 2014).

In addition, the Court notes that although Slim relies on the
ruling in Shields v. United of Omaha Life Ins. Co. to point to
LINA's failure to make an eligibility determination before
accepting his premiums, it must be clarified that this aspect was
addressed by the First Circuit in the context of a breach of
fiduciary duty claim under ERISA. This is not the case as now the
Court is only considering the denial of benefits claim under ERISA
Section 502(a)(1)(B) and not the breach of fiduciary claim under
Section 501 (a)(2) and (a)(3). See (Opinion and Order at Docket
No. 40 at 12).

Civil No. 24-1162 (GMM)
Page – 19 –

Undoubtedly, the collection of premiums in these circumstances where he ultimately did not receive the benefits he sought was unjust to Slim. Yet, any alleged error on the part of Royal Blue or LINA regarding payroll deductions of premiums—which is not established by the Administrative Record— does not alter the plain terms of the Plan, which placed the burden for providing such evidence of insurability on the employee. Further, any alleged failure of Defendants to request such evidence does not alter the correctness of the decision. Insofar the Insurability Requirement was not met at the time of enrollment —since neither evidence of good health nor of LINA's approval in writing are on record— any payroll deductions of premiums do not create coverage where it did not exist. Nor can such deductions render the denial of benefits under the clear terms of the Plan arbitrary or capricious. *See* Shields 50 F.4th 236 (holding it was not arbitrary and capricious for Defendant to deny Plaintiff's claim for excess coverage, given the failure to submit any evidence that could satisfy the good health requirement as established under the terms of the plan).

While it is an unfortunate result, it appears that Slim's sole remedy is a refund of the premiums that were deducted.

Civil No. 24-1162 (GMM)
Page – 20 –

B.    <u>Claim as to Royal Blue</u>

In the First Circuit, the proper party defendant in a denial of benefits claim under Section 502(a)(1)(B) of ERISA is the party that controls the administration of the plan. *See* <u>Terry v. Bayer Corp.</u>, 145 F.3d 28, 36 (1st Cir.1998). In particular, "[e]xercising control over the administration of benefits is the defining feature of the proper defendant under 29 U.S.C. § 1132(a)(1)(B)." <u>Newman v. Metro. Life Ins. Co.</u>, No. CV 12-10078-DJC, 2013 WL 951779, at *6 (D. Mass. Mar. 8, 2013). Performance of "ministerial functions in the processing of [insurance] claims" is insufficient to makes an entity liable under § 502(a)(1)(B) of ERISA. *See* <u>Gomez-Gonzalez v. Rural Opportunities, Inc.</u>, 626 F.3d 654, 666 (1st Cir. 2010). As the First Circuit has explained, "[t]he mere exercise of physical control or the performance of mechanical administrative tasks generally is insufficient to confer fiduciary status." <u>Id.</u> at 665; *see also* <u>Terry</u>, 145 F.3d at 35-36; <u>Beddall v. State St. Bank & Trust Co.</u>, 137 F.3d 12, 18 (1st Cir. 1998)

"As the <u>Terry</u> court suggested, the focus is not on labels but rather on function and, specifically, what party 'controls the administration of the plan.'" <u>DiGregorio v. Pricewaterhouse Coopers Long Term Disability Plan</u>, No. CV 03-11191-DPW, 2004 WL 1774566, at *15-16 (D. Mass. Aug. 9, 2004), *aff'd sub nom.* <u>DiGregorio v. Hartford Comprehensive Employee Ben. Serv. Co.</u>, 423 F.3d 6 (1st Cir. 2005) (*quoting* <u>Terry</u>, 145 F.3d at 36). Put another

Civil No. 24-1162 (GMM)
Page – 21 –

way, "exercising control over the administration of benefits is the defining feature of the proper defendant under 29 U.S.C. § 1132(a)(1)(B)." Llanos-Torres v. Home Depot Puerto Rico, Inc., No. CV 24-01058 (MAJ), 2024 WL 3639202, at *3 (D.P.R. Aug. 2, 2024) (quoting Ministeri v. AECOM Tech. Corp., 2019 WL 13202778, at *3 (D. Mass. Sept. 10, 2019) (collecting cases); see also Cintron - Serrano v. Bristol-Myers Squibb Puerto Rico, Inc., 497 F.Supp.2d 272, 276 (D.P.R. 2007) (collecting cases).[1]

As discussed, upon review of the Administrative Record, the Plan clearly designates Royal Blue as the plan administrator. *See* (Docket No. 47-1 at 42). Yet, as highlighted, in an action for benefits under Section 502(a)(1)(B), this designation is not determinative. As plan administrator, Royal Blue designated LINA as its Claim Fiduciary. *See* (Docket No. 47-2 at 3). Pursuant to the document entitled "Employee Welfare Benefit Plan Appointment of Claim Fiduciary," as the appointed Claim Fiduciary, LINA is

---

[1]*See also* Garren v. John Hancock Mut. Life Ins. Co., 114 F.3d 186, 187 (11th Cir. 1997) (per curiam). If an entity other than the named plan administrator makes the final benefits eligibility determination, then that entity functions as the plan administrator for purposes of an ERISA benefits claim; Law v. Ernst & Young, 956 F.2d 364, 372–73 (1st Cir. 1992) (treating party as plan administrator where it controlled administration of plan); Moore v. LaFayette Life Ins. Co., 458 F.3d 416, 438 (6th Cir. 2006) (imposing liability for ERISA benefits on entity acting as final decision-maker with respect benefits eligibility); Mendes v. Jednak, 92 F.Supp.2d 58, 66 (D.Conn. 2000) (dismissing claim against employer where employer as plan administrator had no involvement in decision to terminate benefits); MacMillan v. Provident Mut. Life Ins. Co., 32 F.Supp.2d 600, 604–05 (W.D.N.Y. 1999) (dismissing claim against plan administrator because claims administrator, not plan administrator, refused to pay benefits).

Civil No. 24-1162 (GMM)
Page – 22 –

"responsible for adjudicating claims for benefits under the Plan, and for deciding any appeals of adverse claim determinations." (Id.). In addition, according to this delegation by the plan administrator, LINA has "**the authority, in its discretion**, to interpret the terms of the Plan, including the Policies, **to decide questions of eligibility for coverage or benefits under the Plan; and to make any related findings of fact. All decisions made by such Claim Fiduciary shall be final and binding** on Participants and Beneficiaries of the Plan to the full extent permitted by law." (Id.) (emphasis added).

Hence, even though Royal Blue is designated as plan administrator, Royal Blue does not necessarily function as the plan administrator for purposes of an ERISA benefits claim. Royal Blue played no role in the decision-making process regarding Slim's supplemental coverage and the eventual denial of benefits. Moreover, Royal Blue did not retain any discretion to make eligibility determinations. In this case, it is LINA as the Claim Fiduciary that has control over the process of reviewing claims and making final decisions regarding eligibility for benefits. LINA made the final eligibility determination as to Slim's requested spousal supplemental coverage.

Accordingly, Royal Blue, as Slim's employer, is not the proper defendant to this denial of benefits action.

Civil No. 24-1162 (GMM)
Page – 23 –

## IV. CONCLUSION

For the reasons stated herein, the Court **GRANTS** LINA's Motion for Judgment at Docket No. 48 and Royal Blue's Motion for Judgment at Docket No. 49 and **DENIES** Plaintiff's Motion for Judgment at Docket No. 50. Judgment shall be entered accordingly, affirming the administrative decision to deny benefits.

IT IS SO ORDERED.

In San Juan, Puerto Rico, May 15, 2025.


                              s/Gina R. Méndez-Miró
                              GINA R. MÉNDEZ-MIRÓ
                              UNITED STATES DISTRICT JUDGE